# Thompson to use, Appellant, *v.* Griggs.

*Gift—Acceptance—Presumption—Evidence.*

Every gift by will or deed is supposed, prima facie, to be beneficial to the donee, and, therefore, the law will presume that the gift is accepted until the contrary is proved.

*Subrogation—Payment—Volunteer—Mortgage.*

When a mere volunteer discharges the debt of another he is not entitled to the remedies which the creditor possesses against the debtor.

Where a mere volunteer in possession of land pays a portion of the mortgage debt on the land for his own benefit, he is not entitled as against the owner to keep alive so much of the mortgage as he paid; and this is especially the case where he has agreed in consideration of the use of the land to pay off the mortgage debt.

*Mortgagor—Comortgagor—Payment of debt.*

Where one of two mortgagors has been compelled to pay a balance of debt, interest and costs due on the mortgage in order to save the land, he is entitled to collect one-half of the sum so paid, out of the interest of the comortgagor.

Argued May 21, 1906.    Appeal, No. 3, April T., 1906, by plaintiff, from order of C. P. Warren Co.; Sept. T., 1904, No. 11, making absolute rule to subrogate in case of O. P. Thompson to use of A. P. Griggs v. Norman B. Griggs and Maud M. Griggs, now intermarried with Edwin Riquer.    Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.    Affirmed.

Rule for subrogation.    Before LINDSEY, P. J.

Issue to determine the amount due on a judgment.

The facts are stated in the opinion of the Superior Court.

At the trial plaintiff offered in evidence an assignment from O. P. Thompson to A. P. Griggs, bearing date August 16, 1904, and filed at No. 11 September Term, 1904, August 17, 1904, for all of the debt and interest and judgment over the sum of $741.03, to wit, the sum of $509.77, for the purpose of showing the assignment of so much of the claim to A. P. Griggs.

Objected to as irrelevant and immaterial under the issue directed by the court.    Objection sustained and exception sealed for the plaintiff. [6]

On a rule for subrogation the court made the following order :

And now, April 10, 1905, the rule is made absolute, in so far as to subrogate Maud M. Riquer to the rights of the plaintiff, O. P. Thompson, to the extent of one-half the amount she paid the sheriff, September 7, 1904, to wit, $423.09, with interest thereon from that date, and she is allowed to collect the same out of the interest held by Norman B. Griggs in the mortgaged premises with the costs of this proceeding. [1]

*Errors assigned* were (1) in making absolute rule for subrogation ; and (6) rulings on evidence as above, quoting the bill of exceptions.

*D. I. Ball*, for appellant.—Whenever one, not a mere volunteer, discharges the debt of another, he is entitled to all the remedies which the creditor possessed against the debtor: Wright v. Grover & Baker S. M. Co., 82 Pa. 80 ; Morris v. Oakford, 9 Pa. 498 ; Miller's Appeal, 119 Pa. 620 ; Haverford Loan & Bldg. Association v. Fire Assn., 180 Pa. 522 ; Harrison v. Ingham, 3 Walker, 403.

*H. J. Muse*, for appellee.—Equity will not keep alive a debt or interest for the benefit of a mere volunteer, neither will it keep it alive for the benefit of one who might otherwise be entitled to have it done if there are special circumstances showing an intent to discharge the debt, much less where there is express proof to that effect: Cottrell's App., 23 Pa. 294 ; Miller's App., 119 Pa. 620 ; Kuhn v. North et al., 10 S. & R. 399.

OPINION BY MORRISON, J., October 5, 1906 :

By deed dated March 25, 1885, O. P. Thompson conveyed to Maud M. Griggs and Norman B. Griggs a farm of about fifty acres in Farmington township, Warren county, Pennsylvania.  The consideration of the conveyance was $1,600. The purchase of the farm was negotiated by Eugene S. Griggs, husband of Maud M., and A. P. Griggs, father of Norman B. Griggs. The conveyance was made to Maud M. and Norman B., as tenants in common, by direction of Eugene S. and A. P. Griggs.  Norman B. Griggs went into possession of the

farm about the time of the purchase, but only retained this possession for a short time when he left the farm and A. P. Griggs went into possession, as alleged and testified to by Maud M. Griggs, under an agreement that he was to pay the taxes and use the farm and pay the mortgage of $800, in favor of O. P. Thompson, given at the date of the deed, to secure one-half of the purchase money for the farm. A. P. Griggs has ever since retained the possession of the farm, using it under said agreement.

At the date of the deed, one-half of the $1,600 purchase money was paid to Thompson by Eugene S. Griggs conveying to him four lots of land in Jamestown, N. Y. An attempt was made herein to show that A. P. Griggs owned two of the lots in Jamestown, but it does not appear that he ever had any paper title to the same nor that he ever had possession of said lots, and the evidence does not identify or individuate the two lots which he claims; and upon this point, it would be entirely unsafe to assume that he had a valid interest in any of the lots conveyed to Thompson.

It clearly appears that by reason of payments made to Thompson by A. P. Griggs on the mortgage, the amount unpaid thereon was reduced, so that on June 25, 1904, there was only due and unpaid to Thompson the sum of $734.78. However, a scire facias was issued on said mortgage and on August 16, 1904, judgment was taken, liquidated and entered thereon for $1,290.80. It further clearly appears that the attorney for O. P. Thompson and A. P. Griggs gave a statement to the attorney for Maud M. Griggs showing that the amount due and unpaid on the mortgage on June 25, 1904, was $734.78. Soon after the entry of the judgment for $1,290.80, Maud M. Griggs, now Riquer, presented her petition to the common pleas court of Warren county asking that said judgment be opened and she be permitted to defend to all of it in excess of $741.03. Thereupon, on November 10, 1904, on testimony, argument and consideration the court opened the judgment as prayed for and awarded an issue to ascertain the amount due on the mortgage on August 17, 1904, for which judgment should have been entered. In this issue A. P. Griggs was made plaintiff and Maud M. Riquer and Norman B. Griggs, defendants, the pleadings to be as per rule of court. Upon this issue a ver-

dict and judgment was obtained that the amount due and unpaid on August 17, 1904, was $741.03.

At this trial counsel for A. P. Griggs produced and offered in evidence an assignment, dated August 11, 1904, from O. P. Thompson to A. P. Griggs for all of the debt and interest on said mortgage above $741.03, to wit, $509.97; the latter sum being the amount A. P. Griggs claimed he had paid to O. P. Thompson during the time he had been in possession of the land.

It was testified to and contended by Maud M. Riquer that A. P. Griggs paid this amount for the use of the farm under the agreement made at the time he went into possession. The court below excluded this offer on the theory that the issue was framed to ascertain the amount due and unpaid on the mortgage on August 17, 1904, and that the rights of A. P. Griggs and Maud M. Riquer could not be determined in the pending issue as to which of them had paid the most on the mortgage. This ruling of the court gives rise to the leading exception in this appeal (6th assignment).

It is not made to appear that A. P. Griggs ever had any title or pretense of title to the mortgaged land. The deed was made to Norman B. Griggs and Maud M. Griggs by A. P. Griggs' consent and direction. Every gift by will or deed is supposed, prima facie, to be beneficial to the donee, and, therefore, the law will presume that the gift is accepted until the contrary is proved: Perry on Trusts, 240.

In the present case Norman B. Griggs accepted the title conveyed by the deed and took possession of the land. No trust therefore resulted in favor of A. P. Griggs under the facts in evidence. Norman B. Griggs never divested himself of said title by conveyance, and it remained in him through all of this controversy. If it had been shown that the conveyance was for the benefit of A. P. Griggs, and not a gift to Norman B., then it might be contended with force that the latter held the title in trust for A. P. Griggs; but the evidence does not warrant any such conclusion. The latter having no equity in the property, he is not within the principle giving the right of a codefendant, a surety, a cosurety or other person making payment of an obligation; nor of one who makes payment under a contract or by reason of privity of interest or of estate, to be subrogated.

Upon the facts in this case, except for his agreement to use the land and pay the mortgage, A. P. Griggs is a mere volunteer, and, therefore, it is not shown, with sufficient clearness, that he has a right to keep alive the portion of the mortgage debt which he paid to Thompson, as against Maud M. Riquer. Norman B. Griggs and Maud M. Riquer are the owners of the land, and we are not satisfied that in the present issue, A. P. Griggs is entitled to be subrogated as to the payments made by him to Thompson during the time he occupied and used the land, as alleged and testified to by Maud M. Riquer, under an agreement to pay the mortgage. If he was to pay the mortgage for the use of the land, clearly he is not entitled to be subrogated. If his payments were those of a mere volunteer, then so much of the debt as he thus paid is extinguished and discharged. When a mere volunteer discharges the debt of another he is not entitled to the remedies which the creditor possessed against the debtor : Cottrell's Appeal—Bowers' Est., 23 Pa. 294 ; Miller's App., 119 Pa. 620 ; Kuhn v. North et al., 10 S. & R. 399. On A. P. Griggs' own theory he appears to be a volunteer, having no legal or equitable title to the land, and therefore equity will not keep alive so much of the mortgage debt as he paid for his own benefit.

But how does he stand in view of his agreement to use the the farm and pay the mortgage ? No reason exists in law or equity why he could not purchase the one-half interest in this land and give it to his son, giving a mortgage thereon and agreeing to pay the mortgage. This is practically the testimony of Maud M. Riquer. If her testimony is accepted, it shows that A. P. Griggs occupied and used the farm ever since the date of the mortgage, making the payments to Thompson under the agreement with Maud M. Riquer, her husband, and Norman B. Griggs, without calling upon any of them for aid and assistance in making the payments or for contribution on account of them. A. P. Griggs must have known that Thompson was applying the payments in discharge of the interest and so much of the debt as was paid. It therefore seems, if there is any doubt that he paid as a mere volunteer, that the payments were made with a clear intent to discharge the debt and interest pro tanto. No matter if A. P. Griggs does claim now that he did not pay on the mortgage to discharge

it pro tanto, yet his conduct and the fact that he continued to occupy and use the farm and make payments from time to time, taking receipts as for payments, tend strongly to corroborate Maud M. Riquer and to lead to the conclusion that he did pay intending to discharge the debt and that his present claim to subrogation is an afterthought, resorted to because he failed in an attempt to get Maud M. Riquer to convey her interest to him for $20.00.

At the time Mrs. Riquer paid the balance of debt, interest and costs due on the mortgage to the sheriff, she was compelled to do so or lose the land. It therefore seems equitable and just that she should have the right to collect one-half of the sum so paid out of the interest of Norman B. Griggs in the land. As the record then stood she and her comortgagor were presumably equally obligated to pay it: Stroud v. Casey, 27 Pa. 471; Watson's App., 90 Pa. 426; Ackerman's App., 106 Pa. 1.

But as the record stands we have devoted more attention to the facts and equities than is necessary. The feigned issue framed and tried before the court and a jury determined that all of the mortgage had been paid except $741.03, and on this verdict a final judgment was entered on April 29, 1905. This judgment does not seem to be appealed from. The record before us is, "appeal of A. P. Griggs from the judgment and decree of the court of common pleas of Warren county, subrogating Maud M. Riquer to the rights of the plaintiff, O. P. Thompson, to the extent of one-half of the amount she paid the sheriff, to wit, $423.09, with interest thereon from that date, and she is allowed to collect the same out of the interest held by Norman B. Griggs in the mortgaged premises, with the costs of this proceeding." Now with a final judgment, unappealed from, that the mortgage debt and interest had all been paid on August 17, 1904, except $741.03, and the additional conceded fact that Maud M. Riquer had paid the whole of this sum, with interest and costs, to the sheriff to prevent the sale of the land, how can it be successfully contended that the court erred in making the order above quoted that she be allowed to collect the one-half of this sum out of the interest of her comortgagor in the land in question? If there was error in the trial and judgment to the effect that the mortgage

had been all paid, except as above stated, then an appeal ought to have been taken from that judgment and the error corrected. The present appeal will not enable us to reverse that judgment, even if we could find that it is erroneous.

This view of the case relieves us from deciding the questions of the competency of A. P. Griggs, Norman B. Griggs and other witnesses. This question has been discussed at a considerable length by the learned counsel for the respective parties, but we will not consider it further.

A careful consideration of the record, assignments of error and arguments of the counsel does not convince us that the learned court committed reversible error.

The assignments of error are all dismissed and the order and decree appealed from is affirmed at the costs of the appellant.